IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| ELTON NANCE, | ) ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 1:08-cv-01272-JDT-egb ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

## REPORT AND RECOMMENDATION

This matter was referred to this Magistrate Court to conduct an evidentiary hearing and issue proposed findings of fact and recommendations for disposition on the claim that trial counsel was ineffective in failing to adequately investigate and to file a motion to suppress. Also, this Magistrate Judge was to appoint counsel if the Defendant qualified [D.E. 20]. Finding the Defendant so qualified, attorney Michael Weinman was designated to represent Mr. Nance [D.E. 30]. The evidentiary hearing was conducted by the Magistrate Judge on October 3, 2012. Thereafter, the record was prepared and the parties briefed their positions.

**Proposed Findings of Fact**

On February 15, 2005, Defendant Elton Nance ("Defendant') was convicted by a jury on one count of possessing a firearm after having been convicted of a felony, this in violation of 18 U.S.C. §922(g). The gun at issue was found by police during a search on December 12, 2003 of a house belonging to Co-Defendant Martedis McPhearson ("McPhearson") located at 228 Shelby Street in Jackson, Tennessee.

In addition to his long-time friend McPhearson,[1] Defendant brought four additional witnesses to this hearing, each of whom testified to varying degrees of Defendant's connections to this house at the time of the drug raid there. The testimony varied from Nance living there (Latoya Person[2]) to him having the freedom to come and go as he pleased (Mary Collier, the mother of the Co-Defendant McPhearson) to the Shelby Street house not being Nance's primary house, but one which he had a key to and kept personal belongings (McPhearson).

Shortly before his arrest, Defendant Nance had been hired to work at Emerson Motors in Humboldt, Tennessee and had rented a house at 1407 Mitchell Street "right down the street" from his job. He did not have a car and could walk to work. Humboldt also was the same town Latoya Person and Nance's minor daughter resided.

Defendant testified that he stayed at his new house some while awaiting a paycheck to turn on the utility services, "So I was kind of like in between there (Shelby Street) and over my daughter's mother's house, so…"

When asked at this hearing why he gave police the Humboldt address instead of the Shelby Street address, Mr. Nance said, "Because I had just rented that house and I just gave them that address. That was the address I gave them because I was going to be moving to that address." Defendant's testimony at this hearing was that he "actually was in the process of moving out" of Shelby Street in Jackson. Beforehand, he said he had previously stayed there, paid no rent, contributed some to the utilities, and kept a bed and some other personal belongings there.

---

[1] Mr. McPhearson earlier had testified in his own suppression hearing that he would not give consent to the police to search the house because he shared his house with two roommates who were not home at that time and he would not agree without their permission. Since Defendant Nance was present at the Shelby Street house at that time, it could be inferred he was not one of the two roommates.

[2] A resident of Humboldt, Ms. Person has a daughter with Defendant and had known him seventeen years.

Nance said that on the day of his arrest he had not had a key to the house until Rico Fuller returned it after borrowing it for "several days before." The Court notes that during the "several days" leading up to the search and seizure Defendant would have been without a key and as such, he would have been without access to the Shelby Street unless someone else was present to allow him inside.

Both Nance and McPherson were at the Shelby Street address when the subject gun was found during the search of the house. At the time of his arrest, Defendant provided officers with another person's name "because he had a warrant outstanding." In a written statement to the police dated December 12, 2003, Defendant Nance denied ownership of the gun attributed to him.

At his first meeting with appointed lawyer Mr. Mueller, Defendant recalled telling his lawyer wanted him to file a motion to suppress, stating "I'm pretty sure that was an illegal search and I wanted to file for a suppression hearing, a Motion to Suppress because the search was illegal, because they didn't have a search warrant." He recalled that Mueller asked him if he could prove that he lived at the house—if he paid bills there which were in his name and that Judge Todd would not grant such a motion without proof that he actually lived there through mail or payment of bills or something physical. Since he could not produce any such proof, Defendant accepted what Mr. Mueller had advised him to the effect that, "he did not have a dog in that fight." And that it was only later when the Defendant was in the prison library that he learned that he had "standing" to challenge the search.

Mr. Mueller does not agree with his client's statements, stating that Nance had expressed his innocence based on this gun not being his and that he never lived or had any connection there

3

at the 228 Shelby Street address. Mr. Nance told Mueller he simply was "at the wrong place at the wrong time." Mr. Mueller confirmed that his office file, along with and other similarly-aged files, had been destroyed.

At the trial itself, Mr. Nance's then-girlfriend Ebony Donald testified that he did not live at 228 Shelby Street.

According to Defendant's testimony at this evidentiary hearing, the government had offered him a plea agreement in exchange for his testimony against his friend and co-defendant McPhearson in his drug trial. Mr. Nance did not agree.

Mr. Mueller did not recall the Defendant ever raising the issue of a motion to suppress with him until after the ruling suppressing the gun in the McPhearson companion case. Then Defendant sent him a letter asking about its effect on his case. Counsel reiterated this inquiry was only after the McPhearson decision. According to Mr. Mueller, it was only then that Defendant Nance changed his position from what he had represented prior to and during his own trial.

During the course of Mr. Mueller's representation of Defendant, he did file a motion *in limine* to exclude from evidence at trial the Defendant's statement to the police. This statement contained wording to the effect that Mr. Nance had said that he was going *home* at 228 Shelby Street[3] and had references to the subject gun.

During cross-examination by the U. S. Attorney at this Court's hearing, Defendant Nance acknowledged that his defense presented at trial centered on establishing Defendant did not live at 228 Shelby Street. Mr. Mueller reiterated that his client had always told him he had no connection with the Shelby Street house. "From the get-go," Defendant Nance had told him that

---

[3] This was the subject of the subsequent motion in limine discussed herein.

4

he was good friends with McPhearson, that one of the ladies there was his girlfriend, that he visited there but never slept or kept stuff there and never had any real contact there, other than just visiting his friends there.

Following the McPhearson suppression ruling, Mr. Mueller felt that Mr. Nance "saw what his co-defendant got and wanted some of that too." Subsequent testimony at the hearing reflected counsel stating it always was their strategy to distance Mr. Nance from the 228 Shelby Street house.

<b>Recommendations for Disposition</b>

Defendant Nance has filed his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255 as concerns his February 15, 2005 conviction on one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §922(g). The basis for this is his assertion that his trial counsel Mr. Mueller provided ineffective assistance in violation of the Sixth Amendment by failing to adequately investigate his case and to file a motion to suppress the gun and his statement to law enforcement authorities subsequent to his arrest.

*Strickland v. Washington*, 466 U.S. 668,687 (1984) establishes the standard for a claim based on ineffective counsel. One must establish deficient performance by counsel and prejudice to the defendant from this performance. To demonstrate prejudice, a movant under § 2255 must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the in outcome." *Id*. Additionally, however, in analyzing prejudice,

The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Lockart v. Fretwell,* 506 U.S. 364, 368 (1993) (citing *United States v. Chronic*, 466 U.S.648, 658 (1984)). "Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. *Lockhart v. Fretwell*, 506 U.S. at 369.

In evaluating an ineffective assistance claim, the Court should not second guess trial counsel's tactical decisions. *Adams v. Jago*, 703 F.2d 978, 981(6th Cir. 1983). Rather, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An ineffective assistance claim based on counsel's failure to raise a particular defense requires as a threshold matter a showing that the defense is meritorious. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Thus, counsel is not ineffective for failing to raise all possible defenses, and particularly for avoiding frivolous motions. *Bowen v. Foltz*, 763 F.2d 191 3 (6th Cir. 1985); *Meeks v. Bergen*, 749 F.2d 322 (6th Cir. 1984)

The facts establish that at the arrest scene, Mr. Nance initially lied about his name by providing police officers a false identity.[4] When faced with the question as to where he lived, he provided police with his Humboldt address, which one easily can assume was his initial effort to distance his self from this Shelby Street house and any criminal exposure attached to living there. So by the time he first met with attorney Mueller, he had already committed himself to living in Humboldt and his own strategy of distancing himself from 228 Shelby Street. This is consistent with what Mr. Mueller said his client told him.

---

[4] After being questioned by another officer later, he gave him his correct name.

Notwithstanding, Defendant now states that he brought up at his first meeting with his lawyer, the issue of his living at Shelby Street and that he wanted him to file a motion to suppress "because the search was illegal." He added that Mr. Mueller questioned him about what proof there was he lived there and advised him that Judge Todd would want to see paperwork such as envelopes and bills reflecting Defendant's name with the Shelby Street address. This Court sees no inconsistency here with Counsel probing for what evidence might exist that could link Defendant to the Shelby Street house. Such evidence certainly would negate the defense that Defendant did <u>not</u> live there (as he had previously told the police).

In what appears to be a more consistent version of the facts here is that Mr. Mueller recalled the Defendant was adamant that he was not connected in any way to the Shelby Street house. And this as a result, the tactical defense plan became and subsequently was implemented to distance Defendant from Shelby Street. And with the Defendant unwilling to strike a plea bargain, the case was tried with that strategy in mind. At trial defense witness Ebony Donald testified that he did not live at the house in Jackson and thus the motion *in limine* to exclude from evidence the Defendant's statement was the only reasonably effective method to prevent from the eyes of the jury, particularly as to the reference therein to the subject gun. Certainly this was consistent with the testimony of defense witness Donald that Nance did not live there. Also, as the first footnote reflects, McPhearson left the Defendant out of his list of roommates when he told police that he would not consent to the house search without his two roommates present, and this was at the time when the Defendant Nance was present.

The notion that Defendant has now raised that he was a residence of 228 Shelby Street (and thus had standing to suppress evidence) defies commonsense as one considers the trial process. One would have to believe Mr. Nance, believing himself a resident of this house on

Shelby Street, still provided the name of his witness Ebony Donald who testified at his trial that he did <u>not</u> live at Shelby Street, and then he sat silently through the rest of his trial and his post-trial matters, to include sentencing, all without voicing any objections to the Court concerning Mr. Mueller and his trial tactics.

This Court determines that the trial strategy implemented by Mr. Mueller was agreed upon between lawyer and client throughout Mr. Mueller's representative period. Defendant now maintains that it was only after his own research revealed to him that he had standing to challenge the search. In essence, he now argues that his attorney should have told the jury that the Defendant lied about his name and his address being 228 Shelby Street when he was arrested there. Also that he should not have called Ebony Donald as a witness to testify he did not live there on Shelby Street, but rather these current witnesses who now have testified he really did live at Shelby Street. And further, that counsel should not have to mentioned his job and house in Humboldt. Tennessee.

The Court determines further that the Defendant set in motion the defense used by his attorney when the Defendant attempted to disassociate himself from the 228 Shelby Street house occupied by his friend McPhearson. When first queried by police there, he provided that he lived at 1407 Mitchell Street in Humboldt, Tennessee. This essentially eliminated the standing to challenge the search. Counsel recognized this, as well as accepting his client's own version and set in course an effective defense under those circumstances. It appears that Mr. Nance now has "buyer's remorse" only after the success of his co-defendant McPhearson, who actually lived at 228 Shelby Street.

Based upon all of the above, it is the report and recommendation of the Court that Plaintiff's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255 be DENIED.

Respectfully Submitted,

**s/Edward G. Bryant**
EDWARD G. BRYANT
UNITED STATES MAGISTRATE JUDGE

Date: **December 26, 2012**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**